13 CV 0976

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN GRALNICK,

    Plaintiff,

- against -

APPLE, INC.,

    Defendant.

CIVIL ACTION NO:_____



## COMPLAINT

Plaintiff, Brian Gralnick, alleges, upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys, except as to those allegations that pertain to the plaintiff himself, which are alleged upon knowledge, as follows:

### NATURE OF THE ACTION

1. This is a direct stockholder action under Section 14(a) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78n(a) (the "Exchange Act") for injunctive relief.

2. Plaintiff, an investor in Apple, Inc. ("Apple" or the "Company") common stock, seeks to require Apple to comply with the "unbundling rules" promulgated by the United States Securities and Exchange Commission ("SEC") under the Exchange Act, including Rules 14a-4(a)(3) and 14a-4(b)(1), 17 C.F.R. §§ 240.14a-4(a)(3) and 240.14a-4(b)(1). These rules require that a proxy card allow shareholders to separately vote on each matter presented.

3. Plaintiff also seeks to require Apple to comply with the SEC's disclosure rules in connection with its "say-on-pay" vote, including SEC Reg. S-K, Item 402(b)(1)(v), 17 C.F.R. 229.402(b)(1)(v). This rule requires that a proxy statement provide sufficient information

regarding how compensation awards to the Company's highest-compensated officers are determined.

4. On January 7, 2013, Apple furnished its stockholders with a proxy statement (the "2013 Proxy Statement") and proxy card (the "Proxy Card") pursuant to SEC Rule 14a-16, 17 C.F.R. § 240.14a-16. The 2013 Proxy Statement and Proxy Card violated the SEC's unbundling rules by grouping together four unrelated amendments to Apple's Restated Articles of Incorporation (the "Articles") and by impermissibly forcing shareholders either to accept or reject all four proposed changes in one vote. The 2013 Proxy Statement also violated the SEC's disclosure rules by providing almost no information as to the determination of how much compensation the Company's highest paid executives receive in Restricted Stock Units.

5. Plaintiff seeks an injunction requiring a separate vote to approve each change to the Articles and full and accurate disclosures with regard to how grants of Restricted Stock Units are determined.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

7. In connection with the acts, omissions, conduct, and wrongs alleged herein, defendant used the mails and the means or instrumentalities of interstate commerce

8. Venue is proper in this district because, according to the New York State Department of State, Division of Corporations, the defendant is a corporation present in the Southern District of New York.

## PARTIES

9.  Plaintiff is, and has been continuously since June 2007, a holder of Apple common stock.

10. Apple is a corporation organized under the laws of the State of California. The Company's last fiscal year ended September 29, 2012. As of January 11, 2013, it had 939,058,000 shares of common stock issued and outstanding. The Company's stock is traded on the NASDAQ under the symbol "AAPL." Apple engages in the design, manufacturing and marketing of mobile communication and media devices, personal computers, and portable digital music players, and sells a variety of related software, services, peripherals, networking solutions, and third-party digital content and applications.

## WRONGFUL ACTS AND OMISSIONS

11. Apple has scheduled an annual shareholder meeting for February 27, 2013. It furnished the 2013 Proxy Statement, along with the Proxy Card, to stockholders on January 7, 2013 to solicit their proxies for four proposals.

12. Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), states,

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy . . . .

(Emphasis added.)

I.  **Proposal No. 2**

13. 17 C.F.R. 240.14a-4, requires that

> (a) The form of proxy . . . (3) Shall identify clearly and impartially each separate matter intended to be acted upon, whether or not related to or conditioned on the approval of other matters, and whether proposed by the registrant or by security

3

> holders . . . (b)(1) Means shall be provided in the form of proxy whereby the person solicited is afforded an opportunity to specify by boxes a choice between approval or disapproval of, or abstention with respect to each separate matter referred to therein as intended to be acted upon, other than elections to office.

14. Proposal No. 2 in the 2013 Proxy Statement (hereinafter "Proposal No. 2") asks that Apple shareholders amend the Articles in four distinct ways, namely these changes would

> 1. eliminate certain language relating to the term of office of directors in order to facilitate the adoption of majority voting for the election of directors;
>
> 2. eliminate "blank check" preferred stock, [i.e., preferred stock that can be granted without shareholder approval];
>
> 3. establish a par value for Apple's common stock of $0.00001 per share.
>
> 4. make other conforming changes ... including eliminating provisions in the Articles related to preferred stock of the Company.

15. Proposal No. 2, however, impermissibly bundles all four changes to the Articles into one vote in contravention of the SEC's "unbundling" rules, embodied in 17 C.F.R. 240.14a-4, so plaintiff can only vote for or against all four of the proposed changes. Consequently, plaintiff is denied the right to vote separately on each of the proposed amendments to the Articles.

**II.     Proposal No. 4**

16. Proposal No. 4 in the 2013 Proxy Statement (hereinafter "Proposal No. 4") asks that Apple shareholders approve "the compensation paid to the named executive officers, as disclosed in this Proxy Statement pursuant to the SEC's executive compensation disclosure rules."

17. This "say-on-pay" vote is required under 15 U.S.C. § 78n-1(a) (2010), which states that

> Not less frequently than once every 3 years, a proxy or consent or authorization for an annual or other meeting of the shareholders for which the proxy solicitation

rules of the Commission require compensation disclosure shall include a separate resolution subject to shareholder vote to approve the compensation of executives, as disclosed pursuant to section 229.402 of title 17, Code of Federal Regulations, or any successor thereto.

18. According to Apple's February 24, 2011 Form 8-K, Apple's shareholders require an annual "say-on-pay" vote.

19. As noted above, 15 U.S.C. § 78n-1(a) requires that shareholders vote to approve the compensation of directors "as disclosed pursuant to 229.402 of title 17, Code of Federal Regulations." Consequently, shareholders must be provided the disclosures required by 17 C.F.R. 229.402 in order for a "say-on-pay" vote to comply with the Exchange Act.

20. 17 C.F.R. 229.402(b)(1)(v) requires that the Company "[d]escribe ... [h]ow the registrant determines the amount (and, where applicable, the formula) for each element to pay[.]"

21. One such "element" of Apple's compensation is, as Proposal No. 4 notes, "Long-term equity awards in the form of RSUs [Restricted Stock Units, which] *constitute the majority* of each named executive officer's total compensation opportunity." (Emphasis added.) Despite RSUs constituting the "majority" of named executive officer compensation, the 2013 Proxy Statement provides practically no description as to how the amount of RSUs to be awarded is determined.

22. Proposal No. 4 references the 2013 Proxy Statement's Compensation Discussion & Analysis, which states in relevant part,

> The Compensation Committee's determination of the size of the RSU awards was a *subjective determination*. The Compensation Committee believed that the RSU awards should be meaningful in size in order to retain the Company's executive team during the CEO transition. There was *no formula or peer group "benchmark" used* in determining these awards. Rather, *the size of the awards was the result of the Compensation Committee's business judgment*, which was *informed by the experiences* of the members of the Committee, the Committee's assessment of the Company's performance, the input received from Mr. Cook, as well as the input and peer group data provided by F.W. Cook.

5

(Emphasis added.)

23. This description provides Apple's shareholders with no real information as to how the largest part of the named executive officers' compensation is determined. In fact, all shareholders are told is that there is a complete absence of any real process at work here. There is no explanation as to what "experiences" the Compensation Committee members draw upon to determine what to award each "named executive officer." There is also no explanation as to how the Compensation Committee evaluates Company performance or what impact such performance has on the determination of RSUs. In addition, besides the fact that Timothy Cook provides "input," there is no explanation as to what Apple's Chief Executive Officer contributes to this determination. And, although this paragraph mentions "the input and peer group data provided by F.W. Cook," this data and input is not disclosed to Apples' shareholders.

24. Simply said, the 2013 Proxy Statement completely fails to "[d]escribe ... [h]ow the registrant determines the amount" of RSUs to grant the "named executive officers," in contravention of 17 C.F.R. 229.402(b)(1)(v). And, because this information is not provided, shareholders do not have an adequate basis to vote for or against Proposal No. 4. 15 U.S.C. § 78n-1(a).

25. This lack of disclosure is especially troubling given the quantity of compensation provided in the form of RSUs. For example, according the 2013 Proxy Statement, on November 2, 2011, the four "named executive officers" other than Timothy Cook were each awarded 150,000 RSUs, for a combined grant date fair value of $238.446 million. This quarter-billion dollar award to four individuals was apparently based on "no formula or peer group 'benchmark,'" but simply the "experiences" of the Compensation Committee and undisclosed input from various sources. No explanation was provided as to why this number was chosen or

as to why the quantity of RSUs was provided in equal amounts to four executives who have different positions at Apple.

### COUNT I
### (Exchange Act Violations of Proposal No. 2)

26. Paragraphs 1 through 13 state a direct claim for relief against the Company under Section 14(a) of the Exchange Act for acting in contravention of the "rules and regulations" prescribed by the SEC.

27. 17 C.F.R. 240.14a-4(a)(3) requires that a proxy card "identify clearly . . . each separate matter intended to be acted upon, whether or not related to or conditioned on the approval of other matters." 17 C.F.R. 240.14a-4(b)(1) requires that shareholders must be "afforded an opportunity to specify ... disapproval ... with respect to each separate matter referred to therein ...."

28. Neither Proposal No. 2 in the 2013 Proxy Statement nor the Proxy Card "identify[ies] clearly" each modification to the Articles that shareholders are asked to vote on despite the fact that these changes were "separate matter[s] intended to be acted upon." Instead, the Proxy Card impermissibly grouped these unrelated changes together as follows:

> Amendment of the Company's Restated Articles of Incorporation to (i) eliminate certain language relating to the term of office of directors in order to facilitate the adoption of majority voting for the election of directors, (ii) eliminate "blank check" preferred stock, (iii) establish a par value for the Company's common stock of $0.00001 per share and (iv) make other conforming changes as described in more detail in Apple's Proxy Statement.

Apple was required to separately list these four changes on the proxy card whether or not they were "related to or conditioned on the approval of" the other changes to the Articles.

29. The Proxy Card also did not "afford an opportunity to specify ... disapproval ... with respect to each separate matter" concerning the amendment to the Articles. Shareholders are required to vote for or against all four amendments as a group.

30. As a result of these actions, plaintiff will be injured and he has no adequate remedy at law.

31. To ameliorate the injury, injunctive relief is required in the form of a new vote that allows shareholders to separately vote for each of the changes to the Articles.

32. Consequently, Apple should be enjoined from (i) certifying or otherwise accepting any vote cast, by proxy, for or on behalf of any Apple shareholder in connection with Proposal No. 2 in Apple's 2013 Proxy Statement or Proxy Card, (ii) amending its articles of incorporation based upon any such vote or votes, or (iii) otherwise proceeding at its February 27, 2013 annual shareholders meeting or at any other time in a manner inconsistent with Rule 14a-4(a)(3) & (b)(1).

33. Plaintiff will suffer irreparable damage unless Apple is enjoined from carrying out the shareholder vote on Proposal No. 2 as currently described.

## COUNT II
### (Exchange Act Violations of Proposal No. 4)

34. Paragraphs 1 through 12 and 16 through 25 state a direct claim for relief against the Company under Section 14(a) of the Exchange Act for acting in contravention of the "rules and regulations" prescribed by the SEC.

35. 17 C.F.R. 229.402(b)(1)(v) requires that the Company "[d]escribe ... [h]ow the registrant determines the amount (and, where applicable, the formula) for each element to pay[.]"

36. Proposal No. 4 in the 2013 Proxy Statement does not "[d]escribe ... [h]ow the registrant determines the amount (and, where applicable, the formula) for" awards of RSUs. Instead, the 2013 Proxy Statement impermissibly states,

> The Compensation Committee's determination of the size of the RSU awards was a *subjective determination*. The Compensation Committee believed that the RSU awards should be meaningful in size in order to retain the Company's executive team during the CEO transition. There was *no formula or peer group "benchmark" used* in determining these awards. Rather, *the size of the awards was the result of the Compensation Committee's business judgment*, which was *informed by the experiences* of the members of the Committee, the Committee's assessment of the Company's performance, the input received from Mr. Cook, as well as the input and peer group data provided by F.W. Cook.

(Emphasis added.)

37. Apple was required to provide actual information to shareholders about how determinations of RSUs are calculated, but the 2013 Proxy Statement is devoid of such facts.

38. This description fails to explain what "experiences" of the Compensation Committee were relevant to these determinations. It also fails to explain how the Committee assesses the Company's performance and what impact this has on RSU determinations. It also fails to explain what input Timothy Cook gives on RSU determinations and how such input is weighted. Finally, although it refers to "input and peer group data provided by F.W. Cook" this data and input is never described or provided to shareholders.

39. As such, Apple's shareholders do not have adequate information to determine whether to vote for or against Proposal No. 4.

40. As a result of these actions, plaintiff will be injured and he has no adequate remedy at law.

41. To ameliorate the injury, injunctive relief is required in the form of a new disclosures compliant with 17 C.F.R. 229.402(b)(1)(v).

42. Consequently, Apple should be enjoined from (i) certifying or otherwise accepting any vote cast, by proxy, for or on behalf of any Apple shareholder in connection with proposal No. 4 in Apple's 2013 Proxy Statement or Proxy Card or (ii) otherwise proceeding at its February 27, 2013 annual shareholders meeting or at any other time in a manner inconsistent with Reg. S-K, Item 402(b)(1)(v).

43. Plaintiff will suffer irreparable damage unless Apple is enjoined from carrying out the shareholder vote on Proposal No. 4 without fully and accurately disclosing all information concerning Proposal No. 4.

## RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

A. A preliminary and permanent injunction, enjoining Apple from

(i) certifying or otherwise accepting any vote cast, by proxy, for or on behalf of any Apple shareholder in connection with Proposal No. 2 in Apple's 2013 Proxy Statement or Proxy Card;

(ii) amending its articles of incorporation based upon any such vote or votes; or

(iii) otherwise proceeding at its February 27, 2013 annual shareholders meeting or at any other time in a manner inconsistent with Rule 14a-4(a)(3) & (b)(1);

(iv) certifying or otherwise accepting any vote cast, by proxy, for or on behalf of any Apple shareholder in connection with Proposal No. 4 in Apple's 2013 Proxy Statement or Proxy Card; or

(v) otherwise proceeding at its February 27, 2013 annual shareholders meeting or at any other time in a manner inconsistent with Reg. S-K, Item 402(b)(1)(v).

B. Awarding such other and further relief as this Court deems just and proper.

Dated: February 12, 2013

BARRACK, RODOS & BACINE

By: /s/ A. Arnold Gershon
A. Arnold Gershon
William J. Ban
Michael A. Toomey
425 Park Avenue, 31st Floor
New York, NY 10022
Telephone: (212) 688-0782
Facsimile: (212) 688-0783

-and-

11

**BARRACK, RODOS & BACINE**
Daniel E. Bacine
Jeffrey A. Barrack
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600
Fax: (215) 963-0838

*Attorneys for Brian Gralnick*